Robert Mackey (SBN 125961)
bobmackeyesq@aol.com
**LAW OFFICES OF ROBERT MACKEY**
660 Baker Street
Building A, Ste. 201
Costa Mesa, CA 92626
Tel: (412) 370-9110

*Additional Counsel Listed on Final Page*

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDIE BLOTNICKI, MIESHA DOBBS, COURTNEY DORAN, JULES FLETCHER, CAROLYN JOHNSTON, ANGELA KACHONIK, LAUREN LEATHERMAN, AMY MALCOLM, TATIANA MARQUEZ, KARA MILLER, AND LEILANI SHIMODA, on behalf of herself and all others similarly situated | CASE NO.: |
| | **CLASS ACTION COMPLAINT** |
| | (1) Interference with Prospective Economic Advantage |
| Plaintiffs, | (2) Intentional Interference with Contractual Relations |
| | (3) Unjust Enrichment |
| v. | (4) Conversion |
| | (5) Violation of the Computer Fraud and Abuse Act |
| | (6) California Comprehensive Computer Data Access and Fraud Act |
| | (7) Mississippi Computer Crimes and Identity Theft Act |
| PAYPAL HOLDINGS, INC. and PAYPAL, INC. | (8) Missouri Statute Against Tampering With Computer Data and Users |
| | (9) New Jersey Computer Related Offenses Act and Computer Crime Law |
| Defendants. | (10) Pennsylvania Computer Offenses Law |
| | (11) Texas Breach of Computer Security Law |
| | (12) Virginia Computer Crimes Act |
| | (13) West Virginia Computer Crime and Abuse Act |
| | (14) Wisconsin Computer Crime Law |
| | **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs Eddie Blotnicki, Miesha Dobbs, Courtney Doran, Jules Fletcher, Carolyn Johnston, Angela Kachonik, Lauren Leatherman, Amy Malcolm, Tatiana Marquez, Kara Miller, and Leilani Shimoda (collectively, "Plaintiffs"), individually and on behalf of all similarly situated persons, allege the following against PayPal Holdings, Inc. and PayPal, Inc. (together, "Defendants" or "PayPal") based on personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel:

### INTRODUCTION

1.      This class action lawsuit arises from PayPal Holding, Inc.'s and PayPal, Inc.'s (together, "Defendants") ownership and use of the Honey browser extension ("Honey") to poach commissions generated by online content creators and personalities who use affiliate links to generate and track online sales.

2.      Honey is a browser extension that is marketed as a tool to help consumers find and apply online coupons to save money. The pitch is that when consumers are checking out to complete a purchase at an online merchant, they click on Honey, and it will identify any online coupon or promotional codes that may be applicable to the purchase and apply them to save consumers money before they complete the purchase.

3.      What Honey does behind the scenes, however, is very different. While pretending to be helpful to the consumer, Honey goes to work under the hood to replace any affiliate link tracking cookies with its own tracking cookie so it will appear to the merchant that Honey originated the sale. Honey then takes the commission, unbeknownst to the consumer, affiliate or vendor, depriving the affiliate of the fruits of their marketing efforts.

4.      This conduct has caused significant financial harm to Plaintiff Eddie Blotnicki, Miesha Dobbs, Courtney Doran, Jules Flecther, Carolyn Johnston, Angela Kachonik, Lauren

Leatherman, Amy Malcom, Taitiana Marquez, Kara Miller, Leilani Shimoda, and similarly situated individuals who rely on affiliate marketing for income.

## **THE PARTIES**

5.      Eddie Blotnicki resides in Minocqua, Wisconsin.

6.      Miesha Dobbs resides in Virginia Beach, VA

7.      Courtney Doran resides in Oakland, New Jersey.

8.      Jules Fletcher resides in Odessa, Texas.

9.      Carolyn Johnston resides in Kiln, Mississippi.

10.     Angela Kachonik resides in Homestead, PA.

11.     Lauren Leatherman resides in Keyser, West Virginia.

12.     Amy Malcom resides in Peculiar, Missouri.

13.     Tatiana Marquez resides in Santa Ana, California.

14.     Kara Miller resides in Santa Maria, California.

15.     Leilani Shimoda resides in Los Angeles, California.

16.     Defendant PayPal Holdings, Inc. is a Delaware corporation that is licensed to do business in California and maintains its principal place of business and corporate headquarters at 2211 North First Street, San Jose, California 95131. PayPal Holdings is the parent company to PayPal, Inc.

17.     Defendant PayPal, Inc. is a Delaware corporation with its principal place of business in San Jose, California. PayPal is a global financial technology company with a primary focus in online payment systems, and it has become one of the world's most recognized and trusted platforms for digital payments.

18.     Defendants PayPal Holdings, Inc. and PayPal, Inc. are collectively referred to in this complaint as "PayPal."

19.    In addition to its digital payment platform, PayPal owns and operates the Honey browser extension.  Honey is a free browser extension developed by PayPal that purports to assist online shoppers in finding and applying discount codes at checkout. Compatible with browsers like Chrome, Firefox, Safari, Opera, and Edge, Honey automatically searches for and tests available coupon codes on over 30,000 popular online merchants. If a working code is found, it applies the one with the biggest savings to the consumer's cart.

20.    As detailed herein, the Honey extension also has a darker, undisclosed purpose of redirecting sales from affiliate online marketers to Honey by replacing the affiliate tracking cookie to make the vendor believe that Honey originated the sale.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because this is a class action with an amount in controversy exceeding $5,000,000, exclusive of interest and costs, and at least one class member is a citizen of a state different from Defendants. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because PayPal maintains is headquarters and principal place of business in San Jose, California.

22.    Venue is proper in this District under 28 U.S.C. § 1391 because PayPal maintains its principal place of business in this District, and a substantial part of the events or omissions giving rise to the claim occurred here.

## COMMON FACTUAL ALLEGATIONS ABOUT DEFENDANTS' SCHEME

23.    Online affiliate marketing is a performance-based strategy in which businesses reward individuals or entities, known as affiliates, for driving traffic or sales to their products or services.

24.    Affiliates promote a company's offerings through various channels—such as

blogs, social media, or websites—and earn a commission for each sale or action generated through their unique referral links provided by the businesses.

25. This model benefits both parties: companies expand their reach without upfront advertising costs, and affiliates monetize their platforms by promoting products and vendors relevant to their audience.

26. In addition to the unique referral links, this system also relies on tracking cookies that attribute sales to the appropriate affiliate to determine who earns the commission. The most commonly employed model to determine who earns the commission for an online purchase is **"last-click" attribution**, which assigns 100% of the credit for a sale to the final touchpoint—the last affiliate link clicked by the consumer before making a purchase. This approach simplifies tracking and compensation, ensuring that the affiliate who directly influenced the final purchase decision is rewarded.

27. PayPal exploits last-click attribution by triggering a Honey pop-up at checkout for customers who have installed the Honey browser extension. When a customer clicks on the Honey link during checkout after previously clicking on an affiliate link, PayPal's affiliate cookie replaces the referring content creator's affiliate cookie.

28. A comparison to a transaction without Honey highlights the issue. Under normal circumstances, when a customer clicks on an affiliate link and then goes on to complete a purchase without further interaction, the sale is correctly attributed to the originating affiliate.

29. In contrast, if the customer uses Honey at checkout after clicking on an affiliate link, PayPal's tracking cookie is surreptitiously swapped in for the originating affiliate link, and the transaction is attributed to PayPal instead, depriving the affiliate of credit for the sale.

30. Notably, even when Honey provides no discount codes and provides no tangible benefit to the customer whatsoever, any click on its pop-up during checkout ensures that it

appears that PayPal referred the customer, and PayPal accordingly receives credit – and commission – for the transaction.

31.    As a result of this interference, affiliate contributions to customer acquisition are not properly tracked by their business partners. PayPal's disruption of the last-click attribution process undermines the ability of Plaintiffs and the Class to demonstrate their performance and deprives them of commissions.

32.    Additionally, PayPal's conduct also prevents Plaintiffs' and the Class's business partners from accurately tracking the customers brought in through affiliate links, knowingly allowing its Honey browser extension to claim credit for customer acquisitions that should have been attributed to Plaintiffs and other content creators. In addition to lost commissions, this also skews metrics that reflect affiliates' role in driving sales, which impacts future business relationships with current and prospective business partners.

33.    These actions have harmed Plaintiffs' and the Class's relationships with their business partners, resulting in diminished trust, less favorable contract terms, and, in some cases, the non-renewal of contracts. PayPal has unjustly benefited from these practices, receiving credit for customer acquisitions at the expense of Plaintiffs and the Class, either through commission payments or click attribution metrics.

**PLAINTIFFS' SUFFERED HARM AS A RESULT OF DEFENDANTS' SCHEME**

***Eddie Blotnicki***

34.    Plaintiff Eddie Blotnicki is a content creator with a substantial social media following, amassing approximately 11,400 followers on the online platform where he has a presence. As a component of his creative posts, he promotes products on YouTube.

35.    In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into his content. He earns

1    commissions when users make purchases through these links. In an average month, Plaintiff

2    receives about $45 in commissions.

3        36.    PayPal used the Honey extension to steal credit and commission for sales made

4    using Plaintiff's affiliate links that Plaintiff originated and for which he should have received

5    credit and commission.

6        37.    But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's

7    sales, Plaintiff would have earned more money from commission payments than he did.

8    Additionally, had Plaintiff's marketing partners been aware of the true volume of sales he has

9    generated, he would have been viewed more favorably by them and been provided with more

10    favorable affiliate terms.

11    ***Miesha Dobbs***

12        38.    Plaintiff Miesha Dobbs is a content creator with a substantial social media

13    following, amassing approximately 6,100 followers on just one of the online platforms where

14    she has a presence. As a component of her creative posts, she promotes products on Facebook,

15    Instagram, and TikTok.

16        39.    In connection with these promotions, Plaintiff participates in various merchants'

17    affiliate advertising programs, incorporating affiliate links into her content. She earns

18    commissions when users make purchases through these links. In an average month, Plaintiff

19    receives about $400 in commissions.

20        40.    PayPal used the Honey extension to steal credit and commission for sales made

21    using Plaintiff's affiliate links that Plaintiff originated and for which she should have received

22    credit and commission.

23        41.    But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's

24    sales, Plaintiff would have earned more money from commission payments than she did.

25

1   Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has

2   generated, she would have been viewed more favorably by them and been provided with more

3   favorable affiliate terms.

4   ***Courtney Doran***

5           42.     Plaintiff Courtney Doran is a content creator with a substantial social media

6   following, amassing approximately 56,000 followers on just one of the online platforms where

7   she has a presence. As a component of her creative posts, she promotes products on Facebook,

8   Instagram, TikTok, X (Twitter), and YouTube.

9           43.     In connection with these promotions, Plaintiff participates in various merchants'

10  affiliate advertising programs, incorporating affiliate links into her content. She earns

11  commissions when users make purchases through these links. In an average month, Plaintiff

12  receives about $10,000 in commissions.

13          44.     PayPal used the Honey extension to steal credit and commission for sales made

14  using Plaintiff's affiliate links that Plaintiff originated and for which she should have received

15  credit and commission.

16          45.     But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's

17  sales, Plaintiff would have earned more money from commission payments than she did.

18  Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has

19  generated, she would have been viewed more favorably by them and been provided with more

20  favorable affiliate terms.

21  ***Jules Fletcher***

22          46.     Plaintiff Jules Fletcher is a content creator with a substantial social media

23  following, amassing approximately 27,700 followers on just one of the online platforms where

24

25

she has a presence. As a component of her creative posts, she promotes products on Facebook, Instagram, TikTok, X (Twitter) and YouTube.

47.    In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $800-$1,000 in commissions.

48.    PayPal used the Honey extension to steal credit and commission for sales made using Plaintiff's affiliate links that Plaintiff originated and for which she should have received credit and commission.

49.    But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's sales, Plaintiff would have earned more money from commission payments than she did. Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has generated, she would have been viewed more favorably by them and been provided with more favorable affiliate terms.

***Carolyn Johnston***

50.    Plaintiff Carolyn Johnston is a content creator with a substantial social media following, amassing approximately 3,000 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook and TikTok.

51.    In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives substantial sums in commissions.

52.    PayPal used the Honey extension to steal credit and commission for sales made using Plaintiff's affiliate links that Plaintiff originated and for which she should have received credit and commission.

53.    But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's sales, Plaintiff would have earned more money from commission payments than she did. Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has generated, she would have been viewed more favorably by them and been provided with more favorable affiliate terms.

*Angela Kachonik*

54.    Plaintiff Angela Kachonik is a content creator with a substantial social media following, amassing approximately 19,500 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook, Instagram, Substack, TikTok, Twitch and YouTube.

55.    In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $200 in commissions.

56.    PayPal used the Honey extension to steal credit and commission for sales made using Plaintiff's affiliate links that Plaintiff originated and for which she should have received credit and commission.

57.    But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's sales, Plaintiff would have earned more money from commission payments than she did. Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has

1    generated, she would have been viewed more favorably by them and been provided with more

2    favorable affiliate terms.

3    ***Lauren Leatherman***

4        58.    Plaintiff Lauren Leatherman is a content creator with a substantial social media

5    following, amassing approximately 939,200 followers on just one of the online platforms where

6    she has a presence. As a component of her creative posts, she promotes products on Facebook,

7    Instagram and TikTok.

8        59.    In connection with these promotions, Plaintiff participates in various merchants'

9    affiliate advertising programs, incorporating affiliate links into her content. She earns

10   commissions when users make purchases through these links. In an average month, Plaintiff

11   receives about $20 in commissions.

12       60.    PayPal used the Honey extension to steal credit and commission for sales made

13   using Plaintiff's affiliate links that Plaintiff originated and for which she should have received

14   credit and commission.

15       61.    But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's

16   sales, Plaintiff would have earned more money from commission payments than she did.

17   Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has

18   generated, she would have been viewed more favorably by them and been provided with more

19   favorable affiliate terms.

20   ***Amy Malcolm***

21       62.    Plaintiff Amy Malcom is a content creator with a substantial social media

22   following, amassing approximately 8,500 followers on just one of the online platforms where she

23   has a presence. As a component of her creative posts, she promotes products on TikTok.

24       63.    In connection with these promotions, Plaintiff participates in various merchants'

25

affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $100 in commissions.

64.    PayPal used the Honey extension to steal credit and commission for sales made using Plaintiff's affiliate links that Plaintiff originated and for which she should have received credit and commission.

65.    But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's sales, Plaintiff would have earned more money from commission payments than she did. Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has generated, she would have been viewed more favorably by them and been provided with more favorable affiliate terms.

***Tatiana Marquez***

66.    Plaintiff Tatiana Marquez is a content creator with a substantial social media following, amassing approximately 6,840 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook, Instagram, and TikTok.

67.    In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $299 in commissions.

68.    PayPal used the Honey extension to steal credit and commission for sales made using Plaintiff's affiliate links that Plaintiff originated and for which she should have received credit and commission.

69.    But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's sales, Plaintiff would have earned more money from commission payments than she did. Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has generated, she would have been viewed more favorably by them and been provided with more favorable affiliate terms.

***Kara Miller***

70.    Plaintiff Kara Miller is a content creator with a substantial social media following, amassing approximately 10,800 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook, Instagram, Substack, TikTok, and X (Twitter).

71.    In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $500 in commissions.

72.    PayPal used the Honey extension to steal credit and commission for sales made using Plaintiff's affiliate links that Plaintiff originated and for which she should have received credit and commission.

73.    But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's sales, Plaintiff would have earned more money from commission payments than she did. Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has generated, she would have been viewed more favorably by them and been provided with more favorable affiliate terms.

***Leilani Shimoda***

74.    Plaintiff Leilani Shimoda is a content creator with a substantial social media

following, amassing approximately 45,000 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Instagram, Facebook and TikTok.

75.     In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $2,000 in commissions.

76.     PayPal used the Honey extension to steal credit and commission for sales made using Plaintiff's affiliate links that Plaintiff originated and for which she should have received credit and commission.

77.     But for PayPal's fraudulent scheme to capture and misappropriate Plaintiff's sales, Plaintiff would have earned more money from commission payments than she did. Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has generated, she would have been viewed more favorably by them and been provided with more favorable affiliate terms.

## CLASS ACTION ALLEGATIONS

78.     Plaintiffs, on behalf of themselves and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), seek damages and injunctive relief on behalf of the members of the following Class and constituent Subclasses (collectively, the "Class"):

> **Nationwide Class:** All persons in the United States who participated in an affiliate commission program with a United States online merchant and had commissions diverted to PayPal as a result of the Honey browser extension.
>
> **California Subclass:** All members of the Class who reside in California.

**Mississippi Subclass:** All members of the Class who reside in Mississippi.

**Missouri Subclass:** All members of the Class who reside in Missouri.

**New Jersey Subclass:** All members of the Class who reside in New Jersey.

**Pennsylvania Subclass:** All members of the Class who reside in Pennsylvania.

**Texas Subclass:** All members of the Class who reside in Texas.

**Virginia Subclass:** All members of the Class who reside in Virginia.

**West Virginia:** All members of the Class who reside in West Virginia.

**Wisconsin Subclass:** All members of the Class who reside in Wisconsin.

79.     The California, Mississippi, Missouri, New Jersey, Pennsylvania, Texas, Virginia, West Virginia, and Wisconsin Subclasses are referred to hereinafter collectively as "the State Subclasses."

80.     Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

81.     **Numerosity:** Members of the Class are so numerous that joinder is impracticable. There are at least tens of thousands of members of the Class, geographically dispersed throughout the United States, such that joinder of all Class Members is impracticable. There are at least thousands of members of each Subclass, such that joinder of all Subclass Members is similarly impracticable.

82.     **Typicality:** Plaintiffs' claims are typical of the claims of the other Class

1    Members. The factual and legal bases of Defendants' liability are the same and resulted in injury

2    to Plaintiffs and all other members of the Class.

3          83.    **Adequate representation:** Plaintiffs will represent and protect the interests of the

4    Class both fairly and adequately. They have retained counsel competent and experienced in

5    complex class-action litigation. Plaintiffs have no interests that are antagonistic to those of the

6    Class, and their interests do not conflict with the interests of the Class Members whom they seek

7    to represent.

8          84.    **Commonality and Predominance:** Questions of law and fact common to the

9    members of the Class predominate over questions that may affect only individual Class Members

10    because Defendants have acted on grounds generally applicable to the Class and because Class

11    Members share a common injury. Thus, determining damages with respect to the Class as a

12    whole is appropriate. The common applicability of the relevant facts to claims of Plaintiffs and

13    the proposed Class are inherent in Defendants' wrongful conduct because the injuries incurred

14    by Plaintiffs and each member of the Class arose from the same conduct alleged herein.

15          85.    There are common questions of law and fact specific to the Class that

16    predominate over any questions affecting individual members, including:

17        a.   Whether Defendants programmed and designed the Honey browser extension in a

18            manner that wrongfully credits PayPal as the originator of sales referrals;

19        b.   Whether the scheme described herein results in PayPal being awarded commission

20            payments that it did not rightfully earn;

21        c.   Whether PayPal was unjustly enriched to the detriment of Plaintiffs in the form of

22            commission payments;

23        d.   Whether consumers and Class Members have been damaged by Defendants' conduct;

24            and

25

1      e.   The nature and scope of appropriate injunctive relief.

2      86.   **Superiority:** Class proceedings on these facts are superior to all other available

3 methods for the fair and efficient adjudication of this controversy, given that joinder of all

4 members is impracticable. Even if members of the Class could sustain individual litigation, that

5 course would not be preferable to a class action because individual litigation would increase the

6 delay and expense to the parties due to the complex factual and legal controversies present in this

7 matter. Here, the class action device will present far fewer management difficulties, and it will

8 provide the benefit of a single adjudication, economies of scale, and comprehensive supervision

9 by this Court. Further, uniformity of decisions will be ensured.

10      87.   Class certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4)

11 because:

12      •      The prosecution of separate actions by the individual members of the Class

13 would create a risk of inconsistent or varying adjudications establishing incompatible standards

14 of conduct for Defendants;

15      •      The prosecution of separate actions by individual Class Members would create a

16 risk of adjudications that would, as a practical matter, be dispositive of the interests of other

17 Class Members not parties to the adjudications, or would substantially impair or impede their

18 ability to protect their interests;

19      •      Defendants have acted or refused to act on grounds generally applicable to the

20 Class, making injunctive and corresponding declaratory relief appropriate with respect to the

21 Class as a whole; and

22      •      The claims of Class Members are comprised of common issues whose resolution

23 in a class trial would materially advance this litigation.

24      **TOLLING OF THE STATUTE OF LIMITATIONS**

25

88.    All relevant statutes of limitations have been tolled due to PayPal's intentional and active concealment of the facts outlined in this complaint. Plaintiffs and the Class could not have reasonably discovered PayPal's practice of covertly manipulating network transmissions to allow Honey to claim sales commissions it did not legitimately earn.

89.    PayPal has had, and continues to have, a duty to disclose to Plaintiffs and the Class its practice of replacing tracking tags that identify online marketers as the source of referrals with its own tracking tags, thereby diverting commissions rightfully owed to online marketers like Plaintiffs and the Class. Due to PayPal's active concealment of this conduct, all applicable statutes of limitations related to these allegations have been tolled.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (ON BEHALF OF THE CLASS)

90.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if fully set forth herein.

91.    Plaintiffs and Class Members are engaged in an economic relationship with online merchants by referring their followers to those merchants through affiliate links. In return, online merchants provide Plaintiffs and Class Members with referral fees or commissions. These relationships are ongoing, and Plaintiffs and Class Members expect to continue earning commissions in exchange for referrals.

92.    PayPal is aware of the referral and commission relationship between Plaintiffs and Class Members, on the one hand, and online merchants, on the other hand.

93.    By utilizing the Honey browser extension, PayPal wrongfully intercepts commission payments owed to Plaintiffs and Class Members who promoted and shared an affiliate link, directly facilitating the referral and subsequent sale of an online merchant's product

of service. Specifically, PayPal displaces tracking tags that identify creators as the source of the referral, substitutes its own tracking tags, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from a creator's affiliate marketing link.

94.    PayPal either intended to usurp commissions from Plaintiffs and Class Members through the conduct alleged herein or knew that its conduct would appropriate commissions and referral fees.

95.    Plaintiffs and Class Members were harmed by PayPal's conduct because the Honey browser extension deprives Plaintiffs and Class Members of monies that they rightfully earned as the true originators of sales arising from their affiliate marketing links.

96.    PayPal's conduct was a substantial factor in causing harm to Plaintiffs and Subclass Members in that, among other things, they suffered economic injury through deprivation of commissions they should have earned from referrals through their affiliate links.

97.    As a result of the above conduct, PayPal is liable to Plaintiffs and Class Members for damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(ON BEHALF OF THE CLASS)**

98.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if fully set forth herein.

99.    Plaintiffs and Class Members have ongoing, valid, and enforceable contractual agreements with online merchants to promote products and services in exchange for commissions.

100.    PayPal knew that online merchants have these ongoing contractual relationships with Plaintiffs and Class Members, under which Plaintiffs and Class Members

receive commissions from online merchants via affiliate links under a last-click-attribution model.

101.    PayPal intentionally disrupted this contractual relationship by intentionally replacing the affiliate codes associated with Plaintiffs' and Class Members' affiliate links with tracking codes associated with Honey.

102.    Because Plaintiffs and Class Members were deprived of their rightfully earned commissions, they sustained harm and economic injury as a direct and proximate result of PayPal's tortious interference with contractual relations. Plaintiffs and Class Members accordingly seek damages in an amount to be proven at trial, as well as injunctive relief barring further interference.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
### (ON BEHALF OF THE CLASS)

103.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if fully set forth herein.

104.    Plaintiffs lack an adequate remedy at law.

105.    Plaintiffs and Class Members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived. These payments were rightfully earned by Plaintiffs and Class Members, not PayPal.

106.    PayPal benefitted from the referral fees and commission payments that were credited to it as a function of the Honey browser extension wrongfully claiming credit for commissions via last-click attribution.

107.    PayPal understood that it so benefitted, and it also understood and appreciated that Honey browser extension would cause the harm described herein.

108.    But for PayPal's unjust and improper use of the browser extension, it would

1    not have been credited and awarded commission on sales that emanated from Plaintiffs' and

2    Class Members' respective affiliate marketing links.

3        109.    As a result of PayPal's wrongful conduct as alleged in this Complaint, it has

4    been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

5        110.    PayPal continues to benefit and profit from the browser extension while

6    Plaintiffs and Class Members continue to have their rightful commission payments diverted to

7    PayPal.

8        111.    PayPal's unjust enrichment is traceable to, and resulted directly and

9    proximately from, the conduct alleged herein, including by using the Honey browser extension to

10    wrongfully credit itself with referrals and commissions it did not rightfully earn.

11        112.    The benefit conferred upon, received, and enjoyed by PayPal was not

12    conferred officiously or gratuitously, and it would be inequitable and unjust for PayPal to retain

13    the benefit.

14        113.    Equity and good conscience militate against permitting PayPal to retain the

15    profits and benefits from its wrongful conduct, which should be restored to Plaintiffs and Class

16    Members.

17                    **FOURTH CAUSE OF ACTION**
                        **CONVERSION**
18                   **(ON BEHALF OF THE CLASS)**

19        114.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if

20    fully set forth herein.

21        115.    Plaintiffs and Class Members possessed or had a right to possess commissions

22    they earned from referring consumers to products and services sold by online merchants. The

23    amount of each commission is a specific and identifiable sum.

24        116.    PayPal intentionally and substantially interfered with Plaintiffs' and Class

25

Members' personal property by usurping commissions and referral fees owed to Plaintiffs and Class Members.

117.    PayPal, without proper authorization, assumed and exercised the right of ownership over these commissions, in hostility to the rights of Plaintiffs and Class Members, without justification.

118.    PayPal's wrongful exercise of control over Plaintiffs' and Class Members' personal property constitutes conversion.

119.    Plaintiffs and Class Members neither assented to nor ratified PayPal's interference with their commissions.

120.    As a direct and proximate result of PayPal's conversion, Plaintiffs and Class Members were harmed.

121.    PayPal is liable to Plaintiffs and Class Members for damages and costs permitted by law.

<u>**FIFTH CAUSE OF ACTION**</u>
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
**18 U.S.C. §§ 1030, *ET SEQ.***
**(ON BEHALF OF THE CLASS)**

122.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if fully set forth herein.

123.    The Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, makes it unlawful for anyone to "knowingly and with intent to defraud, access[] a protected computer without authorization, or exceed[] authorized access, and by means of such conduct further[] the intended fraud and obtain[] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

1      124.    Through its browser extension, PayPal, knowingly and with intent to defraud,

2   exceeded its authorized access to the browsers and computers of consumers that downloaded its

3   browser extension, and through this conduct furthered its deceitful scheme to wrongfully obtain

4   the affiliate commissions of Plaintiffs and Class Members.

5      125.    PayPal exceeded its authorized access to the computers of its consumers by

6   altering or removing affiliate cookies that PayPal was not entitled to alter or remove. Cookie-

7   contaminating extensions, like Honey, are considered "malicious code" that alter cookies they

8   are not authorized to alter. PayPal exceeded its authorized access by exploiting vulnerabilities in

9   the restrictions placed on browser extensions and by exploiting vulnerabilities in the restrictions

10  put in place by affiliate networks to prevent cookie stuffing.

11     126.    As described above, when a consumer activates the Honey extension, PayPal

12  surreptitiously opens a new browser tab in the background to avoid detection by the consumer.

13  Honey then artificially mimics a genuine click on an affiliate marketing link associated with its

14  own affiliate marketing account in this hidden browser tab, causing the online merchant's

15  website to replace the affiliate cookies of Plaintiffs and the Class with Honey's affiliate cookie.

16     127.    This sophisticated technique is designed to exploit vulnerabilities in the

17  restrictions placed on browser extensions and in the technical restrictions put in place by affiliate

18  networks to allow Honey to artificially "trick" the consumer's browser and the online merchant's

19  website into replacing the legitimate affiliate cookies of Plaintiffs and Class Members with the

20  illegitimate affiliate cookies of Honey.

21     128.    Consumers of Honey do not expect the Honey extension to operate in this manner

22  or to alter this data, and the extension's cookie-stuffing functionality is not disclosed in the

23  applicable terms of service or privacy policy, or in any information that is disclosed to

24  consumers who install the extension in the ordinary course.

25

129.    Honey's malicious code is executed in the browsers of computers that are used in or affect interstate commerce, and thus meet the definition of "protected computer" under the CFAA.

130.    PayPal's substitution of its own affiliate cookies for the affiliate cookies of Plaintiffs and Class Members impairs the integrity and availability of the data contained in the original affiliate cookies designating Plaintiffs and Class Members as the proper party to receive an affiliate commission. As a result of PayPal's unlawful scheme, Plaintiffs and Class Members have lost substantial revenue from these highly valuable commissions that were improperly diverted to PayPal. Thus, Plaintiffs and Class Members have suffered damage and loss well in excess of $5,000 during a year within the relevant period as a result of PayPal's conduct.

131.    Plaintiffs and the Class seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the CFAA.

### SIXTH CAUSE OF ACTION
**CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS & FRAUD ACT
CAL. PENAL CODE § 502
(ON BEHALF OF PLAINTIFFS MARQUEZ, MILLER, SHIMODA, AND THE
CALIFORNIA SUBCLASS)**

132.    Plaintiffs Marquez, Miller, and Shimoda, re-allege and incorporate by reference all factual allegations above as if fully set forth herein.

133.    Under the California Comprehensive Computer Data Access & Fraud Act (CDAFA), Cal. Penal Code § 502, a person or entity is liable under the statute if it:

>    (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data. . . .

>    (4) Knowingly accesses and without permission adds, alters, damages, deletes, or

destroys any data, computer software, or computer programs which reside or exist

internal or external to a computer, computer system, or computer network. . . .

(8) Knowingly introduces any computer contaminant into any computer,

computer system, or computer network.

134.    PayPal has deployed its browser extension to knowingly access and without permission alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiffs and California Subclass Members, in order to both (a) execute its unlawful and deceitful scheme and (b) wrongfully control or obtain money, property, or data by diverting the affiliate commissions that rightfully belong to Plaintiffs and California Subclass Members.

135.    PayPal has deployed its browser extension to knowingly access and without permission add, alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiffs and California Subclass Members, which resides on a covered computer system. Under CDAFA, a "computer contaminant" is "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information." Cal. Penal Code § 502(b)(12).

136.    Plaintiffs and California Subclass Members have an ownership interest in the affiliate cookie data that the Honey extension has unlawfully modified, damaged, and/or destroyed. The extension is programmed with computer instructions that are designed to modify, damage, and/or destroy the affiliate cookie data of Plaintiffs and California Subclass Members without their intent or permission, thus meeting the definition of "computer contaminant" under CDAFA. PayPal knowingly introduces this computer contaminant into consumers' computers through its browser extension, in direction violation of CDAFA.

137.    PayPal neither sought nor obtained permission from (a) consumers of its browser

extension, (b) Plaintiffs, or (c) California Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiffs and California Subclass Members residing on consumers' browsers. Likewise, PayPal did not request or receive permission to Plaintiffs' and California Subclass' members' rightful affiliate commissions for its own benefit.

138.    The Honey extension's cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

139.    As a direct result of PayPal's unlawful scheme, Plaintiffs and California Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to PayPal.

140.    Plaintiffs and California Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the CDAFA.

141.    Because PayPal's conduct is willful and deceitful, Plaintiffs and California Subclass Members seek punitive or exemplary damages, as available under CDAFA. PayPal concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiffs and California Subclass Members of substantial commissions.

## SEVENTH CAUSE OF ACTION
### MISSISSIPPI COMPUTER CRIMES AND IDENTITY THEFT ACT
### MISS. CODE § 97-45-3
### (ON BEHALF OF PLAINTIFF JOHNSTON AND THE MISSISSIPPI SUBCLASS)

142.    Plaintiff Johnston re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

143.    Under the Mississippi Computer Crimes and Identity Theft Act, Miss. Code § 97-45-3:

(1) Computer fraud is the accessing or causing to be accessed of any computer,

computer system, computer network or any part thereof with the intent to:

(a) Defraud;

(b) Obtain money, property or services by means of false or fraudulent conduct, practices or representations; or through the false or fraudulent alteration, deletion or insertion of programs or data; or

(c) Insert or attach or knowingly create the opportunity for an unknowing and unwanted insertion or attachment of a set of instructions or a computer program into a computer program, computer, computer system, or computer network, that is intended to acquire, alter, damage, delete, disrupt, or destroy property or otherwise use the services of a computer program, computer, computer system or computer network.

144. PayPal has deployed its browser extension to access the affiliate cookie data on Plaintiff Johnston's and Mississippi Subclass' members' computers by diverting the affiliate commissions that rightfully belong to Plaintiff Johnston and Mississippi Subclass Members.

145. PayPal has deployed its browser extension to access and the affiliate cookie data on Plaintiff Johnston's and Mississippi Subclass' members' computers and obtain affiliate commissions which is the rightful property of Plaintiff Johnston and Mississippi Subclass' members by means of false or fraudulent conduct, practices or representations, and/or through the false or fraudulent alteration, deletion or insertion of programs or data.

146. PayPal has inserted or attached or knowingly created the opportunity for an unknowing and unwanted insertion or attachment of a set of instructions or a computer program, in the form of its browser extension, into Plaintiff Johnston's and Mississippi Subclass' members' computer systems, with an intention to acquire, alter, damage, delete, disrupt, or

destroy affiliate cookie data and commissions that are the rightful property of Plaintiff Johnston's and Mississippi Subclass Members.

147.    Plaintiff Johnston and Mississippi Subclass Members have an ownership interest in the affiliate cookie data that the Honey extension has unlawfully acquired, altered, damaged, deleted, disrupted, and/or destroyed. The extension is programmed with computer instructions that are designed to acquire, alter, damage, delete, disrupt, or destroy the affiliate cookie data of Plaintiff Johnston and Mississippi Subclass Members without their authorization, in direction violation of the Mississippi Computer Crimes and Identity Theft Act.

148.    PayPal neither sought nor obtained permission from (a) consumers of its browser extension, (b) Plaintiff Johnston, or (c) Mississippi Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiffs and Mississippi Subclass Members residing on consumers' browsers. Likewise, PayPal did not request or receive permission to Plaintiffs' and Mississippi Subclass' members' rightful affiliate commissions for its own benefit.

149.    The Honey extension cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

150.    As a direct result of PayPal's unlawful scheme, Plaintiff Johnston and Mississippi Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to PayPal.

151.    Plaintiff Johnston and Mississippi Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the Mississippi Computer Crimes and Identity Theft Act.

152.    Because PayPal's conduct is willful and deceitful, Plaintiff Johnston and Mississippi Subclass Members seek punitive or exemplary damages, as available under

Mississippi Computer Crimes and Identity Theft Act. PayPal concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiffs and Mississippi Subclass Members of substantial commissions.

### EIGHTH CAUSE OF ACTION
**MISSOURI STATUTE AGAINST TAMPERING WITH COMPUTER DATA AND USERS**
**R.S.MO. § 569.095, § 569.099**
**(ON BEHALF OF PLAINTIFF MALCOLM AND THE MISSOURI SUBCLASS)**

153.     Plaintiff Malcolm re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

154.     Under the Missouri statute against tampering with computer data, R.S.Mo § 569.095, a person or entity is liable if it knowingly and without authorization:

(1) Modifies or destroys data or programs residing or existing internal to a computer, computer system, or computer network. . . .

(3) Discloses or takes data, programs, or supporting documentation, residing or existing internal or external to a computer, computer system, or computer network.

155.     Under the Missouri statute against tampering with computer data, R.S.Mo § 569.099, a person or entity is liable if it knowingly and without authorization:

(1)     Accesses or causes to be accessed any computer, computer system, or computer network.

156.     PayPal has deployed its browser extension to knowingly access and without authorization modify or destroy the affiliate cookie data of Plaintiff Malcolm and Missouri Subclass Members by diverting the affiliate commissions that rightfully belong to Plaintiffs and Missouri Subclass Members.

157.     PayPal has deployed its browser extension to knowingly and without

1    authorization take the affiliate cookie data of Plaintiff Malcolm and Missouri Subclass Members

2    that is residing or existing internal to the Plaintiff Malcolm's and Missouri Subclass' members'

3    computers.

4        158.    PayPal has deployed its browser extension to knowingly and without

5    authorization access the affiliate cookie data stored within Plaintiff Malcolm's and Missouri

6    Subclass' members' computer systems.

7        159.    Plaintiff Malcolm and Missouri Subclass Members have an ownership interest in

8    the affiliate cookie data that PayPal's Honey extension has unlawfully modified and/or

9    destroyed. The extension is programmed with computer instructions that are designed to modify

10   and/or destroy the affiliate cookie data of Plaintiff Malcolm and Missouri Subclass Members

11   without their intent or authorization, in direction violation of R.S.Mo § 569.095 and § 569.099.

12       160.    PayPal neither sought nor obtained permission from (a) consumers of its browser

13   extension, (b) Plaintiff Malcolm, or (c) Missouri Subclass Members to add, alter, damage, delete,

14   or destroy the affiliate cookie data of Plaintiff Malcolm and Missouri Subclass Members residing

15   on consumers' browsers. Likewise, PayPal did not request or receive permission to Plaintiff

16   Malcolm's and Missouri Subclass' members' rightful affiliate commissions for its own benefit.

17       161.    The Honey extension's cookie-contaminating mechanism is not disclosed in the

18   applicable terms of service or privacy policy, or in any information provided to consumers in the

19   ordinary course of installing the extension.

20       162.    As a direct result of PayPal's unlawful scheme, Plaintiff Malcolm and Missouri

21   Subclass Members have suffered significant financial losses, including substantial revenue from

22   highly valuable commissions that were improperly diverted to PayPal.

23       163.    Plaintiff Malcolm and Missouri Subclass Members seek compensatory damages,

24   injunctive relief, and all other legal or equitable relief available under R.S.Mo § 569.095 and §

25

569.099.

164.    Because PayPal's conduct is willful and deceitful, Plaintiff Malcolm and Missouri Subclass Members seek punitive or exemplary damages, as available R.S.Mo § 569.095, R.S.Mo § 569.099, and R.S.Mo § 537.525. PayPal concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiff Malcolm and Missouri Subclass Members of substantial commissions.

**NINTH CAUSE OF ACTION**
**NEW JERSEY COMPUTER RELATED OFFENSES ACT AND COMPUTER CRIME LAW**
**N.J. STAT § 2A:38A-3, § 2C:20-25**
**(ON BEHALF OF PLAINTIFF KACHONIK AND THE NEW JERSEY SUBCLASS)**

165.    Plaintiff Doran re-alleges and incorporate by reference all factual allegations above as if fully set forth herein.

166.    Under the New Jersey Computer Related Offenses Act (CROA), N.J. Stat § 2A:38A-3, a person or entity is liable under the statute if it engages in:

(1)    The purposeful or knowing, and unauthorized altering, damaging, taking or destruction of any data, database, computer program, computer software or computer equipment existing internally or externally to a computer, computer system or computer network.

167.    Under the New Jersey Computer Crime Law (CCL), N.J. Stat § 2C:20-25, a person or entity is guilty of computer criminal activity if the person or entity purposely or knowingly and without authorization, or in excess of authorization:

(a)    Accesses any data, data base, computer storage medium, computer program, computer software, computer equipment, computer, computer system or computer network;

(b)    Alters, damages or destroys any data, data base, computer, computer

storage medium, computer program, computer software, computer system or
computer network . . .

168.    PayPal has deployed its browser extension to knowingly access and without
authorization alter, damage, delete, take, and/or destroy the affiliate cookie data of Plaintiff
Doran and New Jersey Subclass Members, in order to both (a) execute its unlawful and deceitful
scheme and (b) wrongfully control or obtain money, property, or data by diverting the affiliate
commissions that rightfully belong to Plaintiff Doran and New Jersey Subclass Members.

169.    PayPal has deployed its browser extension to knowingly access and without
authorization add, alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiff
Doran and New Jersey Subclass Members, which resides on a covered computer system.

170.    Plaintiff Doran and New Jersey Subclass Members have an ownership interest in
the affiliate cookie data that PayPal's Honey extension has unlawfully modified, damaged,
and/or destroyed. The extension is programmed with computer instructions that are designed to
access, modify, damage, and/or destroy the affiliate cookie data of Plaintiff Doran and New
Jersey Subclass Members without their intent or authorization, in direction violation of CROA
and CCL.

171.    PayPal neither sought nor obtained permission from (a) consumers of its browser
extension, (b) Plaintiff Doran, or (c) New Jersey Subclass Members to add, alter, damage, delete,
or destroy the affiliate cookie data of Plaintiffs and New Jersey Subclass Members residing on
consumers' browsers. Likewise, PayPal did not request or receive permission to Plaintiff Doran's
and New Jersey Subclass' members' rightful affiliate commissions for its own benefit.

172.    The Honey extension's cookie-contaminating mechanism is not disclosed in the
applicable terms of service or privacy policy, or in any information provided to consumers in the
ordinary course of installing the extension.

173.    As a direct result of PayPal's unlawful scheme, Plaintiff Doran and New Jersey Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to PayPal.

174.    Plaintiff Doran and New Jersey Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the CROA and CCL.

175.    Because PayPal's conduct is willful and deceitful, Plaintiff Doran and New Jersey Subclass Members seek punitive or exemplary damages, as available under CROA and CCL. PayPal concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiff Doran and New Jersey Subclass Members of substantial commissions.

## TENTH CAUSE OF ACTION
### PENNSYLVANIA COMPUTER OFFENSES LAW
### 18 PA.C.S. § 7611
### (ON BEHALF OF PLAINTIFF KACHONIK AND THE PENNSYLVANIA SUBCLASS)

176.    Plaintiff Kachonik re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

177.    Under the Pennsylvania Computer Offenses Law, 18 Pa.C.S. § 7611, a person or entity is liable under the statute if it:

(1)    accesses or exceeds authorization to access, alters, damages or destroys any computer, computer system, computer network, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof with the intent to interrupt the normal functioning of a person or to devise or execute any scheme or artifice to defraud or deceive or control property or services by means of false or fraudulent pretenses, representations or promises;

(2)    intentionally and without authorization accesses or exceeds authorization

1      to access, alters, interferes with the operation of, damages or destroys any

2      computer, computer system, computer network, computer software, computer

3      program, computer database, World Wide Web site or telecommunication device

4      or any part thereof . . .

5      178.    PayPal has deployed its browser extension to knowingly access and without

6  permission alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiff Kachonik and

7  Pennsylvania Subclass Members, by diverting the affiliate commissions that rightfully belong to

8  Plaintiffs and Pennsylvania Subclass Members.

9      179.    PayPal has deployed its browser extension to knowingly access and without

10  permission add, alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiff Kachonik

11  and Pennsylvania Subclass Members, which resides on a covered computer system.

12      180.    Plaintiff Kachonik and Pennsylvania Subclass Members have an ownership interest

13  in the affiliate cookie data that PayPal's Honey extension has unlawfully modified, damaged,

14  and/or destroyed. The extension is programmed with computer instructions that are designed to

15  access, modify, damage, and/or destroy the affiliate cookie data of Plaintiff Kachonik and

16  Pennsylvania Subclass Members without their authorization, in direction violation of the

17  Pennsylvania Computer Offenses Law.

18      181.    PayPal neither sought nor obtained permission from (a) consumers of its browser

19  extension, (b) Plaintiff Kachonik, or (c) Pennsylvania Subclass Members to add, alter, damage,

20  delete, or destroy the affiliate cookie data of Plaintiff Kachonik and Pennsylvania Subclass

21  Members residing on consumers' browsers. Likewise, PayPal did not request or receive permission

22  to Plaintiff Kachonik and Pennsylvania Subclass' members' rightful affiliate commissions for its

23  own benefit.

24      182.    The Honey extension's cookie-contaminating mechanism is not disclosed in the

25

1    applicable terms of service or privacy policy, or in any information provided to consumers in the

2    ordinary course of installing the extension.

3        183.    As a direct result of PayPal's unlawful scheme, Plaintiff Kachonik and

4    Pennsylvania Subclass Members have suffered significant financial losses, including substantial

5    revenue from highly valuable commissions that were improperly diverted to PayPal.

6        184.    Plaintiff Kachonik and Pennsylvania Subclass Members seek compensatory

7    damages, injunctive relief, and all other legal or equitable relief available under the Pennsylvania

8    Computer Offenses Law.

9        185.    Because PayPal's conduct is willful and deceitful, Plaintiff Kachonik and

10   Pennsylvania Subclass Members seek punitive or exemplary damages, as available under the

11   Pennsylvania Computer Offenses Law. PayPal concealed the material fact that it was diverting

12   affiliate commissions from creators to itself, depriving Plaintiffs and Pennsylvania Subclass

13   Members of substantial commissions.

14                          **ELEVENTH CAUSE OF ACTION**
                   **TEXAS BREACH OF COMPUTER SECURITY LAW**
15                          **TEX. PENAL CODE § 33.02**
            **(ON BEHALF OF PLAINTIFF FLETCHER AND THE TEXAS SUBCLASS)**
16

17       186.    Plaintiff Fletcher re-alleges and incorporates by reference all factual allegations

     above as if fully set forth herein.
18

19       187.    Under the Texas Breach of Computer Security Law, Tex. Penal Code §33.02, a

20   person or entity is liable under the statute if it:

21           (a) . . . knowingly accesses a computer, computer network, or computer system

22           without the effective consent of the owner. . . .

23           (b-1) . . . with the intent to defraud or harm another or alter, damage, or delete

24           property, . . . knowingly accesses:

25

                            CLASS ACTION COMPLAINT - 35

(1) a computer, computer network, or computer system without the

effective consent of the owner . . .

188.    PayPal has deployed its browser extension to knowingly access a computer system without the effective consent of Plaintiff Fletcher and Texas Subclass Members.

189.    PayPal has deployed its browser extension with the intent to defraud or harm or alter, damage, or delete affiliate cookie data of Plaintiff Fletcher and Texas Subclass Members, and knowingly access a computer system without the effective consent of Plaintiff Fletcher and Texas Subclass Members.

190.    Plaintiff Fletcher and Texas Subclass Members have an ownership interest in the affiliate cookie data that the Honey browser extension has unlawfully modified, damaged, and/or destroyed. The extension is programmed with computer instructions that are designed to modify, damage, and/or destroy the affiliate cookie data of Plaintiff Fletcher and Texas Subclass Members without their intent or permission.  PayPal knowingly introduces this extension and in turn accesses consumers' computers through its browser extension, in direction violation of Texas Breach of Computer Security Law.

191.    PayPal neither sought nor obtained permission from (a) consumers of its browser extension, (b) Plaintiff Fletcher, or (c) Texas Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiff Fletcher and Texas Subclass Members residing on consumers' browsers. Likewise, PayPal did not request or receive permission to Plaintiff Fletcher's and Texas Subclass' members' rightful affiliate commissions for its own benefit.

192.    The Honey browser extension's cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

1    193.    As a direct result of PayPal's unlawful scheme, Plaintiff Fletcher and Texas

2 Subclass Members have suffered significant financial losses, including substantial revenue from

3 highly valuable commissions that were improperly diverted to PayPal.

4    194.    Plaintiff Fletcher and Texas Subclass Members seek compensatory damages,

5 injunctive relief, and all other legal or equitable relief available under the Texas Breach of

6 Computer Security Law.

7    195.    Because PayPal's conduct is willful and deceitful, Plaintiffs and Texas

8 Subclass Members seek punitive or exemplary damages, as available under the Texas Breach of

9 Computer Security Law. PayPal concealed the material fact that it was diverting affiliate

10 commissions from creators to itself, depriving Plaintiff Fletcher and Texas Subclass Members of

11 substantial commissions.

**TWELFTH CAUSE OF ACTION**
**VIRGINIA COMPUTER CRIMES ACT**
**VA. CODE § 18.2-152.1 *et seq.***
**(ON BEHALF OF PLAINTIFFS DOBBS AND THE VIRGINIA SUBCLASS)**

196.    Plaintiff Dobbs re-alleges and incorporates by reference all factual allegations

above as if fully set forth herein.

197.    Under the Virigina Computer Crimes Act (VCCA), Va. Code § 18.2-152.1 *et*

*seq.*:

(18.2-152.3) Any person who uses a computer or computer network, without authority

and:

(1) Obtains property or services by false pretenses;

(2) Embezzles or commits larceny; or

(3) Converts the property of another is guilty of the crime of computer fraud. . . .

(18.2-152.4) It is unlawful for any person, with malicious intent, or through

1    intentionally deceptive means and without authority, to:

2        (3) Alter, disable, or erase any computer data, computer programs or computer

3        software . . .

4        198.    PayPal has deployed its browser extension to access and without authority obtain

5    affiliate commissions that is the rightful property of Plaintiff Dobbs and Virginia Subclass

6    Members by using affiliate cookie data stored on Plaintiff Dobbs' and Virginia Subclass'

7    members' computers.

8        199.    PayPal has deployed its browser extension with malicious intent or through

9    intentionally deceptive means and without authority to alter, disable, or erase the affiliate cookie

10   data of Plaintiff Dobbs and Virginia Subclass Members, which resides on a covered computer

11   system.

12       200.    Plaintiff Dobbs and Virginia Subclass Members have an ownership interest in the

13   affiliate cookie data that the Honey browser extension has unlawfully modified, damaged, and/or

14   destroyed. The extension is programmed with computer instructions that are designed to modify,

15   damage, and/or destroy the affiliate cookie data of Plaintiffs and Virigina Subclass Members

16   without their intent or authorization, in direction violation of the VCCA.

17       201.    PayPal neither sought nor obtained permission from (a) consumers of its browser

18   extension, (b) Plaintiff Dobbs, or (c) Virginia Subclass Members to add, alter, damage, delete, or

19   destroy the affiliate cookie data of Plaintiff Dobbs and Virigina Subclass Members residing on

20   consumers' browsers. Likewise, PayPal did not request or receive permission to Plaintiff Dobbs'

21   and Virginia Subclass' members' rightful affiliate commissions for its own benefit.

22       202.    The Honey browser extension's cookie-contaminating mechanism is not disclosed

23   in the applicable terms of service or privacy policy, or in any information provided to consumers

24   in the ordinary course of installing the extension.

25

203.    As a direct result of PayPal's unlawful scheme, Plaintiff Dobbs and Virginia Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to PayPal.

204.    Plaintiff Dobbs and Virginia Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the VCCA.

205.    Because PayPal's conduct is willful and deceitful, Plaintiff Dobbs and Virginia Subclass Members seek punitive or exemplary damages, as available under the VCCA. PayPal concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiff Dobbs and Virigina Subclass Members of substantial commissions.

## THIRTEENTH CAUSE OF ACTION
### WEST VIRIGINIA COMPUTER CRIME AND ABUSE ACT
### W. VA. CODE § 61, ART. 3C
### (ON BEHALF OF PLAINTIFF LEATHERMAN AND THE WEST VIRGINIA SUBCLASS)

206.    Plaintiff Leatherman re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

207.    Under the West Viriginia Computer Crime and Abuse Act, W. Va. Code § 61, Art. 3C, a person or entity is liable under the statute if it:

> (3C-4) (a) . . . knowingly and willfully, directly or indirectly, accesses or causes to be accessed any computer, computer services, or computer network for the purpose of: (1) Executing any scheme or artifice to defraud; or (2) obtaining money, property, or services by means of fraudulent pretenses, representations, or promises . . .

> (3C-7) (a) . . . knowingly, willfully and without authorization, directly or indirectly, tampers with, deletes, alters, damages or destroys or attempts to tamper with, delete, alter, damage or destroy any computer, computer network, computer

software, computer resources, computer program or computer data or who

knowingly introduces, directly or indirectly, a computer contaminant into

any computer, computer program or computer network which results in a loss of

value of property. . . .

208.    PayPal has deployed its browser extension to knowingly and willfully, directly or indirectly, access the affiliate cookie data of Plaintiff Leatherman and West Virginia Subclass Members, in order to both (1) execute its unlawful and deceitful scheme to defraud and (2) obtain money, property, or services by means of fraudulent pretenses, representations, or promises by diverting the affiliate commissions that rightfully belong to Plaintiff Leatherman and West Virginia Subclass Members.

209.    PayPal has deployed its browser extension to knowingly, willfully and without authorization, directly or indirectly tamper with, delete, alter, damage or destroy the affiliate cookie data of Plaintiff Leatherman and West Virginia Subclass Members, and has knowingly introduced, directly or indirectly, this computer contaminant, which has resulted in a loss of value of commissions that is the rightful property of Plaintiff Leatherman and West Virginia Subclass Members.

210.    Under the West Viriginia Computer Crime and Abuse Act, "computer contaminant" is "any set of computer instructions that are designed to damage or destroy information within a computer, computer system, or computer network without the consent or permission of the owner of the information. They include, but are not limited to, a group of computer instructions commonly called viruses or worms that are self-replicating or self-propagating and are designed to contaminate other computer programs or computer data, consume computer resources, or damage or destroy the normal operation of the computer." W. Va. Code § 61-3C-3(4).

211.    Plaintiff Leatherman and West Virginia Subclass Members have an ownership interest in the affiliate cookie data that the Honey browser extension has been designed to damage and destroy within Plaintiff Leatherman's and West Viginia Subclass' Members computer systems without their consent or permission. The extension is programmed with computer instructions that are designed to contaminate the affiliate cookie data of Plaintiff Leatherman and West Virginia Subclass Members without their intent or permission, thus meeting the definition of "computer contaminant" under the West Viriginia Computer Crime and Abuse Act. PayPal knowingly introduces this computer contaminant into consumers' computers through its browser extension, in direction violation of the Act.

212.    PayPal neither sought nor obtained permission from (a) consumers of its browser extension, (b) Plaintiff Leatherman, or (c) West Virginia Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiff Leatherman and West Virginia Subclass Members residing on consumers' browsers. Likewise, PayPal did not request or receive permission to Plaintiff Leatherman's and West Virginia Subclass' members' rightful affiliate commissions for its own benefit.

213.    The Honey browser extension's cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

214.    As a direct result of PayPal's unlawful scheme, Plaintiff Leatherman and West Virginia Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to PayPal.

215.    Plaintiff Leatherman and West Virginia Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the West Viriginia Computer Crime and Abuse Act.

216.    Because PayPal's conduct is willful and deceitful, Plaintiff Leatherman and West Virginia Subclass Members seek punitive or exemplary damages, as available under the West Viriginia Computer Crime and Abuse Act. PayPal concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiff Leatherman and West Virginia Subclass Members of substantial commissions.

**FOURTEENTH CAUSE OF ACTION**
**WISCONSIN COMPUTER CRIMES LAW**
**WIS. STAT § 943.70**
**(ON BEHALF OF PLAINTIFF BLOTNICKI AND THE WISCONSIN SUBCLASS)**

217.    Plaintiff Blotnicki re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

218.    Under the Wisconsin Computer Crimes Law, Wis. Stat. § 943.70, a person or entity is liable under the statute if it willfully, knowingly and without authorization:

(a)    Modifies data, computer programs or supporting documentation.

(b)    Destroys data, computer programs or supporting documentation.

(c)    Accesses computer programs or supporting documentation. . . .

219.    PayPal has deployed its browser extension to knowingly, willfully, and without authorization access the affiliate cookie data of Plaintiff Blotnicki and Wisconsin Subclass Members by diverting the affiliate commissions that rightfully belong to Plaintiff Blotnicki and Wisconsin Subclass Members.

220.    PayPal has deployed its browser extension to knowingly, willfully and without authorization, modify, delete, alter, damage or destroy the affiliate cookie data of Plaintiff Blotnicki and Wisconsin Subclass Members, which has resulted in a loss of value of commissions that is the rightful property of Plaintiff Blotnicki and Wisconsin Subclass Members.

221.    Plaintiff Blotnicki and Wisconsin Subclass Members have an ownership interest

1   in the affiliate cookie data that the Honey browser extension has been designed to access,

2   modify, damage and destroy within Plaintiff Blotnicki's and Wisconsin Subclass' members'

3   computer systems without their authorization, in direction violation of the Wisconsin Computer

4   Crimes Law.

5          222.    PayPal neither sought nor obtained permission from (a) consumers of its browser

6   extension, (b) Plaintiff Blotnicki, or (c) Wisconsin Subclass Members to add, alter, damage,

7   delete, or destroy the affiliate cookie data of Plaintiff Blotnicki and Wisconsin Subclass

8   Members residing on consumers' browsers. Likewise, PayPal did not request or receive

9   permission to Plaintiff Blotnicki's and Wisconsin Subclass' members' rightful affiliate

10  commissions for its own benefit.

11         223.    The Honey extension's cookie-contaminating mechanism is not disclosed in the

12  applicable terms of service or privacy policy, or in any information provided to consumers in the

13  ordinary course of installing the extension.

14         224.    As a direct result of PayPal's unlawful scheme, Plaintiff Blotnicki and Wisconsin

15  Class Members have suffered significant financial losses, including substantial revenue from

16  highly valuable commissions that were improperly diverted to PayPal.

17         225.    Plaintiff Blotnicki and Wisconsin Subclass Members seek compensatory

18  damages, injunctive relief, and all other legal or equitable relief available under the Wisconsin

19  Computer Crimes Law.

20         226.    Because PayPal's conduct is willful and deceitful, Plaintiff Blotnicki and

21  Wisconsin Subclass Members seek punitive or exemplary damages, as available under the

22  Wisconsin Computer Crimes Law. PayPal concealed the material fact that it was diverting

23  affiliate commissions from creators to itself, depriving Plaintiffs and Wisconsin Subclass

24  Members of substantial commissions.

25

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests that the Court:

A.      Certify this case as a class action, and appoint Plaintiffs as Class Representatives and appoint Class Counsel;

B.      Enter judgment in favor of Plaintiffs and the Classes;

C.      Enter injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Classes, including to prevent the Honey browser extension from taking credit for sales it did not originate;

D.      Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and restitution to which Plaintiffs and the Classes are entitled;

E.      Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F.      Award Plaintiffs and the Classes pre- and post-judgment interest as provided by law;

G.      Enter such other orders as may be necessary to restore to Plaintiffs and the Classes any money and property acquired by PayPal through its wrongful conduct;

H.      Award Plaintiffs and the Classes reasonable litigation expenses and attorneys' fees as permitted by law; and

I.      Award such other and further relief as the Court deems necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

DATED: February 10, 2025            Respectfully submitted,

*/s/ Robert Mackey*
Robert Mackey (SBN 125961)
bobmackeyesq@aol.com
**LAW OFFICES OF ROBERT MACKEY**
660 Baker Street
Building A, Ste. 201
Costa Mesa, CA 92626
Tel: (412) 370-9110

Jason S. Rathod, Esq.*
Nicholas A. Migliaccio, Esq.*
**Migliaccio & Rathod LLP**
412 H St N.E., Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
Fax: (202) 800-2730
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

* Pro hac admission to be sought